1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11   VANALBERT SIEGRIST,                    )   Case No.: 1:10-cv-01976-LJO-SAB (PC)
                                            )
12                    Plaintiff,            )
                                            )   FINDINGS AND RECOMMENDATIONS
13          v.                              )   REGARDING DEFENDANTS' MOTIONS
                                            )   FOR SUMMARY JUDGMENT
14   J.J. JOHNSON, et al.,                  )
                                            )   [ECF Nos. 32, 40]
15                    Defendants.           )
                                            )
16   _____       )

17          Plaintiff Vanalbert Siegrist is appearing pro se and in forma pauperis in this civil rights action

18   pursuant to 42 U.S.C. § 1983.

19                                          **I.**

20                          **PROCEDURAL BACKGROUND**

21          This action is proceeding against Defendants Registered Nurse J.J. Johnson, Licensed

22   Vocational Nurse Stringer, Doctor Nguyen, and Correctional Officer Dutra on Plaintiff's claim of

23   deliberate indifference to a serious medical need in violation of the Eighth Amendment.

24          On December 15, 2014, Defendant Dutra filed a motion for summary judgment relating to

25   exhaustion of the administrative remedies.  Plaintiff filed an opposition on February 25, 2015.

26          In the interim, Plaintiff filed a second amended complaint on February 9, 2015, which mooted

27   Defendants' December 15, 2014, motion for summary judgment relating to the first amended

28   complaint, and it should be denied on such basis. Accordingly, on February 25, 2015, Defendants filed

                                            1

a motion for summary judgment for Plaintiff's failure to exhaust the administrative remedies as to his claims against Defendant Dutra in the second amended complaint.  (ECF No. 40.)  Plaintiff filed an opposition on April 30, 2015, and makes reference to the prior opposition filed in this case.  (ECF No. 51.)

**II.**

**DISCUSSION**

**A.      Motion for Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657

2

F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### B.      Exhaustion under the Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings.  Albino, 747 F.3d at 1170.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  Prior to 2011, the process was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15, § 3084.2(a), and the appeal had to be submitted within fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c).  Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level,

3

and third formal level, also known as the Director's Level.  Tit. 15, § 3084.5.  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201. On January 28, 2011, the inmate appeals process was modified and limited to three level of review with provisions allowing the first level to be bypassed under specific circumstances.  Cal. Code Regs. tit. 15, § 3084.7.

### C.    Allegations of Complaint

On June 11, 2009, Plaintiff told the medication line LVN that he was having disorientation and equilibrium problems, severe depth perception issues, and other symptoms of something not right. The medication line LVN told Plaintiff that if the problems persisted, he should let the medical staff know and "she would see what she could do to get Plaintiff in to see the doctor."

On June 12, 2009, Plaintiff tried to go directly to the clinic to see the doctor, and Defendant Dutra told Plaintiff he "couldn't see [Plaintiff's] symptoms anyway."  Defendant Johnson agreed with Defendant Dutra and refused to allow Plaintiff to see a doctor.  Later that day, Plaintiff had "some kind of seizures" and fell off his bunk bed, causing Plaintiff to "painfully bust[] up his knee . . . ." Plaintiff claims he still has scars on his knee to this day as a result of the fall.

The next morning, on June 13, 2009, Plaintiff went to the medication line and informed Defendant Stringer of the fall and that his symptoms were getting worse.  Defendant Stringer told Plaintiff he "was probably drunk" and "there was nothing they could do anyway."  At noon that same day, Plaintiff again informed Defendant Stringer that his conditions were worsening, and "yet again nothing was done to get Plaintiff in to see the doctor[.]"  Plaintiff informed the evening medical line LVN that his conditions were continuing to worsen, but the LVN "refused to let Plaintiff see a doctor."

Plaintiff went back to the medication line on the following morning, June 14, 2009, and told Defendant Stringer his symptoms had worsened, but was "denied access to the doctor on duty."  It took Plaintiff [three] tries" to take his medications because of his worsening depth perception.  That afternoon Plaintiff again attempted to see a doctor which was denied by LVN Stringer.  At the evening

4

medication line, Plaintiff informed an LVN that his symptoms were worse and things were getting

dangerous for him, but the LVN refused to allow Plaintiff to see a doctor.

At approximately 6:00 p.m. that evening, Plaintiff "blacked out and had several seizures." Plaintiff's cellmate "found [him] on the floor of his assigned cell . . . unresponsive." Plaintiff was taken to the hospital where, three days later, a doctor found Plaintiff's "Dilantin toxicity levels were at least four to five times the high side of twenty" and diagnosed Plaintiff with "Dilantin toxicity." Plaintiff was informed the conditions he had complained of June 12 through June 14, 2009, were "side effects from being over medicated on Dilantin and Diflucan that [were] prescribed by prison physicians."

Plaintiff was hospitalized for eleven days while his Dilantin toxicity levels were lowered to "normal, safe, non-life threatening levels." Plaintiff was discharged with a doctor's order that he not be prescribed "[Diflucan] any longer." However, upon returning to Pleasant Valley State Prison (PVSP), Defendant Nguyen "placed Plaintiff back on the same medication" despite Plaintiff's objection because he did not know what else to do.

**D.    Statement of Undisputed Facts**

1.    Inmate grievances concerning medical care and medical staff members must be submitted to, and are processed by, the institution's Health Care Appeals Office.

2.    Inmate grievances concerning custodial staff members, such as correctional officers, must be submitted to, and are processed by, the Institutional Appeals Office.

3.    Plaintiff filed an inmate health-care grievance at the first level on or about July 7, 2009, with the Health Care Appeals Office.

4.    This grievance was assigned log number PVSP-27-09-14180 at the institutional level.

5.    A third level decision on this appeal was issued on or about April 12, 2010, and given the third level appeal number OTLA-51-09-20120.

6.    This appeal addresses Plaintiff's medical treatment beginning on June 14, 2009.

7.    There is no mention of Defendant Dutra or any incident the day before, June 13, 2009, in this appeal.

8.    Importantly, the Health Care Appeals Office would not process a grievance against Defendant Dutra because he is a correctional officer, and not a member of the medical staff.

9.    Rather, Plaintiff was required to file an inmate grievance directed at Defendant Dutra with the Institutional Appeals Office.

10.    The PVSP Institutional Appeals Office possesses all inmate grievances submitted by inmates at the institutional level for grievances directed at custodial staff members such as Defendant K. Dutra.

11.    Inmate grievances concerning medical issues are not processed through this office, but are instead processed by the Health Care Appeals office at PVSP.

12.    Plaintiff's claim against correctional officer Dutra, that he prevented Plaintiff from seeing the doctor, would be categorized as a "staff complaint," and are required to be submitted to the Institutional Appeals Office, and not the Health Care Appeals Office, because the claim involves a custodial staff member.

13.    Plaintiff was therefore required to submit a grievance concerning Defendant Dutra to the Institutional Appeals Office.

14.    Plaintiff did not submit an appeal that the Institutional Appeals Office accepted and processed concerning Defendant Dutra, or Plaintiff's alleged denial of access to medical treatment by Defendant Dutra on June 13, 2009.

**E.    Findings**

1.    <u>Administrative Remedy Process</u>

Defendant bears the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy.  <u>Albino</u>, 747 F.3d at 1172.  Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.1(a).

2.    <u>Sufficiency of Appeal</u>

Exhaustion requirements are designed to deal with parties who do not want to exhaust and who would prefer not to give the agency a fair and full opportunity to adjudicate their claims.  Woodford,

6

1  548 U.S. at 90.  For this reason, proper procedural and substantive exhaustion of administrative

2  remedies is required, which demands compliance with an agency's deadlines and other critical

3  procedural rules.  Id.; Wilkerson, 772 F.3d at 839.  Here, Plaintiff filed a CDCR 602-HC appeal,

4  Appeal Log No. PVSP-27-09-14180, which was accepted for review and exhausted.  The Court must

5  review the appeal and its responses to determine whether it was sufficient to exhaust Plaintiff's claim

6  against Defendant Dutra arising from his failure to summon medical care for him on June 13, 2009.

7  The Court is required to consider the issue under the regulations in place at the time of the 2009

8  grievance.

9       An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem

10  for which the prisoner seeks redress."  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing

11  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted).  "[T]he

12  prisoner need only provide the level of detail required by the prison's regulations," and prior to

13  January 28, 2011, "[t]he California regulations require[d] only that an inmate describe the problem and

14  the action requested."  Sapp, 623 F.3d at 824 (citations and internal quotation marks omitted).  While

15  the standard provides a low floor, it advances the primary purpose of a grievance, which is to notify

16  the prison of a problem.  Griffin, 557 F.3d at 1120; accord Akhtar v. Mesa, 698 F.3d 1202, 1211 (9th

17  Cir. 2012).

18       Plaintiff's initial appeal, Log No. PVSP-27-09-14180, stated as follows:

19  On Sunday 6-14-09 I informed the LVN at pill call that I wasn't feeling good that my
20  legs felt like weights and I was having trouble keeping my balance and was lightheaded
   this was at noon, the LVN brushed me off and told me if I was still feeling like this the
21  next day they would see what they could do.  That night I told the LVN again that it
   was getting worse and was told to wait until the next day.  That evening I blacked out
22  on the floor.  I came to a couple of times only to black out again.  I was taken to
   Coalinga Regional Medical Center for treatment/evaluation and was admitted to the
23  hospital due to Dilantin Toxicity, according to Doctor Paul Griffin my levels were 4X
   the high side of 20.  I was placed on IV fluids to flush my system out.  I was told by the
24  Doctor at the hospital that my sore aching body and muscles [and] blurred vision, loss
   of motor skills, no depth perception were all side effects from being prescribed Dilantin
25  and Diflucan, that was prescribed to me by PVSP "A" Facility Medical Staff.  I was
   kept in the hospital and not discharged until my Dilantin levels dropped to normal.  The
26  Doctor wrote orders specifically for PVSP medical staff not to prescribe me Diflucan
   any longer since it almost killed me.  Yet I saw Doctor Nguyen at "A" Facility medical
27  and I was again prescribed Diflucan and Dilantin.  I told the Doctor and he stated I

28

understand that this combination put you in the hospital, but I don't know what to do. When I first told the LVN that I wasn't feeling good and gave her my symptoms I should have been taken to medical and seen or to CTC, not ignored, this was deliberate indifference to my serious medical needs. And the medical staff and doctors at PVSP are to be held to the same standard as if they were working at a hospital ect., and they should have known not to prescribe me both Diflucan and Dilantin, that this combination is dangerous, this was gross negligence, malpractice and deliberate indifference, I was forced to endure multiple blackouts and seizure episode and almost die. And then to top it all off I was prescribed the very same combination of medications Diflucan [and] Dilantin again by PVSP medical Doctor Nguyen, which is even further deliberate indifference, gross negligence and malpractice. I believe that this is being done on purpose with the hopes that I die, what else can be the explanation for this as it is clear that I almost died from this combination of meds.

(ECF No. 40-3, Ex. A.)

The First level appeal was partially granted and indicated the Dilantin was discontinued and Plaintiff's Valley Fever was improving and there was no fever or cough, yet there was still some body aches and night sweats. It was noted the pain was controlled with medication, and the neurologist was currently working to adjust Plaintiff's medication. (Id.)

Plaintiff was dissatisfied and proceeded to the second level of review because he had not received proper treatment and his Valley Fever symptoms continued. Plaintiff indicated that he continued to have pain in his joints, back and was feeling dizzy with balance issues, yet medical staff ignored him.

The second level appeal was likewise partially granted adding, the hiring authority deemed Plaintiff's appeal not to meet staff complaint criteria. It was noted that Plaintiff had follow up visits with his provider and a telemedicine consult with the neurologist for his seizure disorder on July 8, 2009, and a further neurology appointment was pending. Tests demonstrated that Plaintiff was responding well with treatment for Valley Fever. (Id.)

At the third level of Plaintiff, Plaintiff "indicated on June 14, 2009, [he] informed the LVN on A Facility yard [he] did not feel well, [he] felt lightheaded and had trouble with [his] balance; [he was] informed if [he] continued not to feel well to return to the clinic the next day. That evening [he] returned to the clinic stating [he was] feeling worse; again [he was] informed to return the next day. Later in the evening [he] stated [he] blacked out and was taken to Coalinga Regional Medical Center,

8

where [he was] diagnosed with Dilantin toxicity.  [¶]  [Plaintiff] requested proper treatment for valley fever, and not to be prescribed the same medication that put [him] in the hospital.  [He] also want[ed] 1,000,000,00, one million dollars for the gross negligence, deliberate indifference, and malpractice by PVSP medical personnel.  (Id.)  The Director's Level decision concurred with the first and second levels of review, and stated Plaintiff will continued to be evaluated and treatment will be provided based on his clinician evaluation, diagnosis, and recommended treatment plain, in accordance with appropriate policies and procedures.  It was determined there was no compelling evidence that warranted intervention because Plaintiff's medical condition had been evaluated by licensed clinical staff and he was receiving treatment that was deemed medically necessary.  (Id.)

Inmates are required to procedurally and substantively exhaust their claims, Woodword, 548 U.S. at 90; Wilkerson, 772 F.3d at 839, and Plaintiff was therefore required to "use all the steps the prison holds out, enabling the prison to reach the merits of the issue," Griffin, 557 F.3d at 1119 (citing Woodword, 548 U.S. at 90).  Although the floor was "low" under the pre-January 28, 2011, regulations, Plaintiff was nonetheless required to grieve sufficient facts to place prison officials on notice of the problem for which the prisoner seeks redress.  The Court finds that under the regulations in effect at the time Plaintiff filed his appeal, the appeal did not suffice to place prison officials on notice that Defendant Dutra prevented Plaintiff from seeing the doctor on June 13, 2009.  Certainly Plaintiff would have remembered the actions allegedly taken by Defendant Dutra on June 13, 2009, yet Plaintiff's grievance never once mentioned anything that took place on June 13, 2009, or any actions that can be attributed to Defendant Dutra for which Plaintiff seeks relief in the instant action.

Moreover, the Health Care Appeals Office would not process a grievance against Defendant Dutra because he is a correctional officer, not a medical staff member.  (ECF No. 40-3, Navarro Decl. ¶ 4.)  Rather, Plaintiff was required to file an inmate grievance directed at Defendant Dutra with the Institutional Appeals Office.  (ECF No.40-2, Morgan Decl. ¶¶ 1, 9.)  The Institutional Appeals Office at PVSP processes all inmate grievances submitted by inmates at the institutional level for complaints directed at custodial staff members such as Defendant Dutra.  (Id. at ¶ 9.)  Inmate grievances regarding medical issues are not processed through the Health Care Appeals office at PVSP.  (Id.)  Plaintiff's claim against Defendant Dutra constituted a "staff complaint," and therefore Plaintiff was

required to submit any grievance to the Institutional Appeals Office, not the Health Care Appeals Office.  (Id.)  Because Plaintiff did not submit any appeal to the Institutional Appeals Office relating to Defendant Dutra, he could not have exhausted the administrative remedies as to Defendant Dutra. (Id. ¶¶ 10, 11.)  Consequently, Plaintiff's appeal Log No. PVSP-27-09-14180, did not suffice to alert prison officials to the nature of the wrong for which redress is now sought, and Defendant Dutra's motion for summary judgment should be granted.

### III.

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendant's December 15, 2014, motion for summary judgment for Plaintiff's failure to exhaust the claims against Defendant Dutra in the first amended complaint be DENIED as MOOT in light of Plaintiff's filing a second amended complaint; and

2.      Defendant's February 25, 2015, motion for summary judgment for Plaintiff's failure to exhaust the claims against Defendant Dutra in the second amended complaint be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:  **June 3, 2015**

_____
UNITED STATES MAGISTRATE JUDGE